```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/20/16
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KEEVA WILLIAMS,

            Plaintiff,

-against-

14 Civ. 10009 (AT)

NATIONAL RAILROAD PASSENGER CORP.,

            Defendant.

**ORDER**

ANALISA TORRES, District Judge:

Plaintiff, Keeva Williams, brings this action alleging that Defendant, the National Railroad Passenger Corporation ("Amtrak") retaliated against her in violation of the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. § 20101 *et seq.* (2012). Amtrak moves for summary judgment. For the reasons stated below, and the motion is GRANTED.

## BACKGROUND

For roughly sixteen months in 2012 and 2013, Amtrak employed Williams as a coach cleaner at Sunnyside Yard in Long Island City, New York. Pl. Resp. Def. L.R. 56.1 Stmt. & Counterstmt. Facts ("Pl. Stmt.") ¶ 1. On September 17, 2013, Williams was working under the supervision of Ernest Simmons. *Id.* ¶ 11. That night, there was a dispute between Williams, Simmons, and another cleaner, William Castro, as to whether one of Williams and Castro's assigned railcar lavatories had been properly cleaned. *Id.* ¶¶ 12-15. As Williams was leaving the railcar to return to the yard, she was walking immediately in front of Simmons. *Id.* ¶ 16. Williams turned around toward Simmons, who "put his hands on [Williams], pushing her forearm away in a downward position." *Id.* ¶ 17. Williams admits that she was not physically injured by this contact. *Id.* ¶ 47. According to Amtrak, Williams then stated, "Did this nigger

just put his fucking hands on me?" *Id.* ¶ 19. Williams concedes that she may have used profanity but denies using the racial slur. *Id.* ¶¶ 19-20.

That evening, Williams recounted the incident in statements provided to both Amtrak management and Amtrak Police. *Id.* ¶¶ 26, 30. Williams contends that she was reporting an assault by her manager as a railroad safety incident. Pl. Mem. 5, ECF No. 26. Williams also states that she reported the incident as a railroad safety concern to Acting General Foreman Felix Hull and to the Amtrak Safety Hotline. Pl. Stmt. ¶¶ 121-22.

Following the September 13 incident, Williams was placed on temporary leave. *Id.* ¶ 31. On September 20, Amtrak issued a Formal Notice of Investigation, charging Williams with failure to perform her duties, unprofessional conduct, failure to follow instructions, workplace violence, and harassment. *Id.* ¶¶ 32-33. Williams was also accused of filing a false report with Amtrak Police. *Id.* On October 4, Amtrak held a disciplinary hearing. *Id.* ¶ 36. In his decision, the Hearing Officer found that Amtrak had proven most of the charges against Williams, but he rejected the portion of the charges related to workplace violence and filing a false police report. Def. Supp. Decl. Ex. ("Def. Ex.") Q at 3, ECF No. 19. On October 15, 2013, Amtrak discharged Williams. Pl. Stmt. ¶ 42.

As a result of these events, Williams brings a retaliation claim against Amtrak pursuant to the FRSA. In relevant part, the FRSA prohibits railroad carriers from discriminating against employees who engage in certain protected activities related to railroad safety and security. *See* 49 U.S.C. § 20109. Here, Williams claims that her reporting of the incident to Amtrak authorities was a protected activity under the FRSA and that Amtrak discharged her in retaliation for filing the reports.

2

## DISCUSSION

A. <u>Summary Judgment Standard</u>

Summary judgment is appropriate when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-57 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-26 (1986). A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party initially bears the burden of informing the Court of the absence of a genuine dispute of material fact by citing to particular evidence in the record. Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 323-24; *Koch v. Town of Brattleboro*, 287 F.3d 162, 165 (2d Cir. 2002). If the nonmoving party has the ultimate burden of proof on specific issues at trial, the movant may also satisfy its own summary-judgment burden by demonstrating that the adverse party cannot produce admissible evidence to support an issue of fact. *Celotex*, 477 U.S. at 322-23; *PepsiCo Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine dispute of material fact. *Beard v. Banks*, 548 U.S. 521, 529 (2006); *PepsiCo*, 315 F.3d at 105. In deciding the motion, the Court views the record in the light most favorable to the nonmoving party. *Koch*, 287 F.3d at 165.

B. <u>The FRSA</u>

The FRSA seeks "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101. The FRSA contains a whistleblower provision which prohibits railroads from taking adverse personnel actions against one of their employees when he or she engages in certain protected activities. § 20109. These

activities include reporting, for example, (1) violations of "any Federal law, rule, or regulation relating to railroad safety or security," § 20109(a)(1); (2) the misuse of federal funds related to railroad safety or security, *id.*; (3) a work-related personal injury or illness, § 20109(a)(4); or (4) "any accident or incident resulting in injury or death . . . or damage to property occurring in connection with railroad transportation," § 20109(a)(6).

In a FRSA retaliation claim, at trial the burden of proof is on the plaintiff, who "must prove by a preponderance of the evidence that (1) [she] engaged in protected activity; (2) the employer knew that [she] engaged in the protected activity; (3) [she] suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable action." *Hernandez v. Metro-N. Commuter R.R.*, 74 F. Supp. 3d 576, 579 (S.D.N.Y. 2015) (quoting *Bechtel v. Admin. Review Bd.*, 710 F.3d 443, 447 (2d Cir. 2013)), *appeal dismissed*, No. 15-327 (2d Cir. July 24, 2015). If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to prove "by clear and convincing evidence, that [it] would have taken the same unfavorable personnel action in the absence of" the protected activity. *Young v. CSX Transp., Inc.*, 42 F. Supp. 3d 388, 393 (N.D.N.Y. 2014) (quoting 49 U.S.C. § 42121(b)(2)(B)(ii)).

C. *Prima Facie* Case

The parties do not dispute that Williams' discharge was an unfavorable personnel action satisfying the third element of her retaliation claim. They dispute each of the remaining elements.

1. Protected Activity

With regard to the first element, the Court finds as a matter of law that Williams' reports were not protected activity within the meaning of the FRSA. Williams claims that her reports were protected by the FRSA provisions covering reporting of (1) violations of federal law or

4

regulation related to railroad safety or security, § 20109(a)(1), or (2) hazardous safety or security conditions, § 20109(b)(1)(A).[1] However, to qualify as a FRSA-protected activity, the reports must be made with a both subjectively and objectively reasonable belief that such a violation or hazardous condition has occurred. *Hernandez*, 74 F. Supp. 3d at 580 (quoting *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 221 (2d Cir. 2014)).

For the purposes of summary judgment, the Court assumes that Williams submitted her reports in good faith and subjectively believed that they concerned railroad safety. Even so, Williams has not adduced evidence to show that such a belief was objectively reasonable. As an initial matter, Williams cites no railroad safety or security law that was violated by Simmons' conduct. The only law Williams points to is assault within federal maritime and territorial jurisdiction, 18 U.S.C. § 113, which does not apply outside those special jurisdictions, *see* 18 U.S.C. § 7, and in any case is not a law related to railroad safety or security. More generally, the Court observes that this incident is plainly not the kind of conduct or condition contemplated by the FRSA. Congress enacted the current retaliation provision as part of the implementation of the recommendations of the National Commission on Terrorist Attacks upon the United States. Implementing Recommendations of the 9/11 Commission Act of 2007, Pub. L. No. 110-53, § 1521, 121 Stat. 266, 444-48. Viewing the statutory text and legislative history in context, the FRSA was intended to prevent and control safety risks like train derailments and security risks like terrorism, not the noninjurious contact of one railroad employee's arm with another's. *See id.*; H.R. Rep. No. 110-259, at 348 (2007) (Conf. Rep.).

---

[1] Williams does not contend that her actions were protected by any other FRSA provision, such as those for reporting work-related injuries or the misuse of federal railroad funds.

The most analogous cases in where a plaintiff successfully alleged protected activity involved at least some tenuous nexus to safe and secure railroad operations, such as workplace injuries or ongoing threats of violence. *See, e.g., Rossi v. Nat'l R.R. Passenger Corp.*, Civil No. 16-111, 2016 WL 2609790, at *3 (E.D. Pa. May 5, 2016) (ongoing threats and failure to take safety precautions related to asbestos work); *Jones v. BNSF Ry. Co. (Jones I)*, No. 14-2616, 2016 WL 183514, at *6 (D. Kan. Jan. 14, 2016) (explicit threats of violence); *Rookiard v. BNSF Ry. Co.*, No. C14-176, 2015 WL 6626069, at *5 (W.D. Wash. Oct. 29, 2015) (threat of violence related to air brake testing); *Armstrong v. BNSF Ry. Co.*, 128 F. Supp. 3d 1079, 1088-89 (N.D. Ill. 2015) (workplace injury). In the case relied on by Williams, an altercation and breakdown of communication between a train's engineer and its conductor jeopardized the safety of the train they were meant to be operating. *See Leiva v. Union Pac. R.R. Co.*, ARB Case Nos. 14-016, 14-017, at 6-7 (U.S. Dep't of Labor May 29, 2015). No such nexus to railroad safety or security exists in this case. Viewing the facts in the light most favorable to Williams, no reasonable jury could find that Williams' reports were made with an objectively reasonable belief that there had been either a violation of a railroad safety or security law or regulation or a hazardous railroad safety or security condition. Accordingly, Williams has failed to make out the first element of a *prima facie* case.

2. Employer Knowledge and Unfavorable Personnel Action

As to the second element, the evidence indicates that the Amtrak employees who made the decision to discharge Williams were aware of her reports to management and Amtrak Police. Def. Exs. P-Q. Thus, had those reports been protected activity, this knowledge element would have been satisfied. Likewise, as noted above, Williams' discharge satisfies the unfavorable personnel action of the third element.

### 3. Contributing Factor

Finally, with regard to the fourth element of the retaliation claim, the Court finds as a matter of law that Williams' reports—even had they constituted a protected activity—were not a contributing factor to her discharge. The Amtrak Hearing Officer who heard the charges against Williams and the Superintendent who imposed the discharge were both aware of the report to the Amtrak Police, Def. Exs. P-Q, as Williams had been charged in part based on her filing a false report, Pl. Stmt. ¶ 32. But the Hearing Officer specifically rejected this charge based on a lack of evidence. Def. Ex. Q at 3. According to the Hearing Officer's report, his decision sustaining Amtrak's charges was based on Williams' refusal to perform her job, failure to follow instructions, and harassment of Simmons, including the use of a racial slur. *Id.* at 1-5. According to the Superintendent, the decision to discharge Williams was based not only on the September 17 incident but also a history of other misconduct. Def. Ex. P at 20. Although Williams objects to Amtrak's account of her previous disciplinary incidents, she admits to the existence of a series of charges. Pl. Stmt. ¶¶ 4-10.

Williams' only argument with regard to this element is that Amtrak would never have initiated its investigation into her conduct had she not reported the incident. Pl. Mem. 13. Thus, she concludes, without the reports she would not have been discharged. *Id.* Even assuming that the reports triggered the investigation, Williams' argument fails. Williams is correct that, in general, if "the employer would not have taken the adverse action without the protected activity, the contributing factor standard is satisfied." *Jones v. BNSF Ry. Co.* (*Jones II*), No. 14-2616, 2016 WL 3671233, at *3 (D. Kan. July 11, 2016). But where a report alerts company management to the fact that the reporting employee may herself have violated its rules, that employee must show some additional evidence of causation beyond this mere chain of events.

*BNSF Ry. Co. v. U.S. Dep't of Labor*, 816 F.3d 628, 639 (10th Cir. 2016); *Jones II*, 2016 WL 3671233, at *3. "Any contrary holding would permit [Williams] to use protected activity as a shield against the consequences of [her] independent rules violation." *Jones II*, 2016 WL 36771233, at *4. Williams has argued no more than this chain of events, and she has adduced no evidence to contradict Amtrak's account—well supported by the record—that her discharge was based on her own misconduct. As a result, Williams cannot satisfy the fourth element and, having failed to satisfy two of the required elements, cannot state a *prima facie* case as a matter of law.

### D. Amtrak's Rebuttal

Finally, even were Williams able to make out a *prima facie* case, Amtrak has carried its burden of rebutting Williams' case by clear and convincing evidence. For the same reasons that Williams cannot satisfy the fourth element just discussed, Amtrak has shown that it would have discharged Williams even in the absence of her allegedly protected activity. Viewing the evidence in the light most favorable to Williams, and even under the stricter clear-and-convincing standard, no reasonable jury could find otherwise. Amtrak's decisionmakers considered Williams' reports of the incident with Simmons and expressly rejected that reporting as the basis for the discipline. Instead, the Hearing Officer found, and the appeals office sustained, substantial evidence of independent violations of Amtrak rules by Williams during the September 17 incident. *See* ¶ 43; Def. Ex. Q. Moreover, Amtrak has chronicled a litany of previous misconduct with which Williams was charged, *see* Def. Exs. B-H, and which contributed to the decision to discharge her, Def. Ex. P at 20. Williams marshals no evidence to dispute this record, and her opposition papers make no argument in response to Amtrak's contention that it has satisfied its burden. Accordingly, Amtrak has shown the absence of any

genuine dispute of material fact with regard to this defense. Although "this affirmative defense is often not suitable for summary judgment determination," here Amtrak has carried its heavy burden. *Kuduk v. BNSF Ry. Co.*, 768 F.3d 786, 793 (8th Cir. 2014).

## CONCLUSION

Amtrak "is entitled to a judgment as a matter of law because [Williams] has failed to make a sufficient showing on [two] essential element[s] of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323. Additionally, Amtrak has established that there is no genuine issue of material fact as to its affirmative defense, on which it bears the burden of proof. Accordingly, Amtrak's motion for summary judgment is GRANTED. The Clerk of Court is directed to terminate the motion at ECF No. 18 and to close the case.

SO ORDERED.

Dated: September 20, 2016
New York, New York

_____
ANALISA TORRES
United States District Judge